# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**QUIK PAYDAY, INC.,**
**d/b/a QUIK PAYDAY.COM**
**FINANCIAL SOLUTIONS ONLINE,**
**WWW.QUIKPAYDAY.COM,**
**QUIK PAYDAY**

       **Plaintiff,**

v.                                                                  Case No. 06-2203-JWL

**JUDI M. STORK, in her official capacity**
**as Acting Bank Commissioner and**
**KEVIN C. GLENDENING, in his official**
**capacity as Deputy Commissioner of the**
**OFFICE OF THE STATE BANK**
**COMMISSIONER, STATE OF KANSAS,**

       **Defendants.**

## MEMORANDUM AND ORDER

This case concerns 42 U.S.C. § 1983 claims filed by plaintiff Quik Payday, Inc. against officers of the Office of the State Bank Commissioner, State of Kansas, in their official capacities. Quik Payday specifically alleges that defendants have violated its rights

under the Commerce and Due Process Clauses of the Constitution. Quik Payday's complaint also alleges that the Kansas Uniform Consumer Credit Code, on its face and as applied by defendants, is unconstitutional.

This matter comes before the court on defendants' Motion to Dismiss[1], which alleges that: (1) Quik Payday lacks Article III standing because it suffered no injury in fact; (2) Quik Payday's claim lacks ripeness because it has not yet been injured and (3) Quik Payday failed to exhaust administrative remedies.[2] The Court denies the defendants' motion to dismiss for the reasons explained below.

## I.    Background

Quik Payday operated as a payday lender that provided payday loans via the internet to borrowers; its principal place of business was Logan, Utah. In mid-2005, the Kansas Office of the State Bank Commissioner ("OSBC") contacted Quik Payday regarding its on-line payday loans. On March 13, 2006, OSBC issued a Summary Order to Cease and Desist, Pay Civil Penalty (Fine), to Bar from Future Application for Licensure, and to Pay Restitution for Violations ("Summary Order") against Quik Payday for allegedly violating the Kansas Uniform Consumer Credit Code (KCCC), K.S.A. § 16a-1-101 *et seq*. The

---

[1] Quik Payday has made a motion for oral argument on this issue. Because the court, in its discretion under District of Kansas Local Rule 7.2, concludes that oral argument is unnecessary, that motion is denied.

[2] Defendants make a loose reference to summary judgment, but have not complied with District of Kansas Local Rule 56.1 pertaining to summary judgment. Without prohibiting them from proceeding at a later date with a properly filed motion, the court denies summary judgment at this time.

Summary Order specifically alleges that since May 11, 2001, Quik Payday has "engaged in the business of making, and /or undertaking direct collection of payments from at least 3,077 supervised (payday) loans, as defined by [K.S.A. § 16a-1-301(46) (2005 Supp.)] with at least 972 Kansas consumers, without first having obtained a license from the administrator." On March 29, 2006, Quik Payday submitted a timely request for a hearing to the administrator of the OSBC.  This lawsuit was filed on May 19, 2006, by Quik Payday against Judi M. Stork, in her official capacity as Acting Bank Commissioner of the OSBC, and Kevin C. Glendening, in his capacity as Administrator, Deputy Commissioner for the OSBC ("defendants").  A pre-hearing conference was held on May 22, 2006, before the presiding officer of the administrative action.  At the pre-hearing conference, Quik Payday filed a motion to stay the OSBC administrative proceedings pending the outcome of this lawsuit, which, after oral arguments on August 11, 2006, was granted on August 16, 2006.  A final order has not been filed in the administrative proceeding.

On August 17, 2006, without knowing the state administrative proceedings had been stayed the day before, this court ordered the parties to file supplemental briefing on the issue of whether or not the court must abstain from hearing Quik Payday's claims due to the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971).  Because the state proceedings have been stayed, the *Younger* abstention doctrine is no longer applicable.  *See Southwest Air Ambulance, Inc. v. City of Las Cruces*, 268 F. 3d 1162 (10th Cir. 2001)(holding that because ongoing municipal proceeding had been stayed, *Younger*

3

abstention no longer applied).

## II.     Analysis

Although the questions of whether a plaintiff has Article III standing and whether a case is ripe for judicial review are analytically distinct, in many cases they substantially overlap. *Morgan v. McCotter*, 365 F. 3d 882, 887 (10th Cir. 2004). The issues are particularly "difficult to divorce" in cases like this where a defendant's principal argument is that the plaintiff has yet to suffer an injury in fact. *Id.* Nevertheless, the court will examine the standing and ripeness issues separately.

### A.     Article III Standing

"Those who seek to invoke the jurisdiction of the federal courts must satisfy the case-or-controversy requirement imposed by Article III of the Constitution." *Ward v. Utah,* 321 F.3d 1263, 1266 (10th Cir.2003) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). To establish Article III standing, a plaintiff must demonstrate: (1) it has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that a favorable decision will redress the injury. *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). **The burden of establishing these elements falls on the party invoking federal jurisdiction.** *Defenders of Wildlife*, **504 U.S. at 561. These requirements are an indispensable part of the plaintiff's case, not simply pleading requirements.** *Id.*

4

Each element of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." *Defenders of Wildlife*, 504 U.S. at 561 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883-89 (1990)). Therefore, at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice. *Bennett v. Spear*, 520 U.S. 154, 168 (1997)(citing *Defenders of Wildlife*, 504 U.S. at 561).

In this case, the defendants allege that Quik Payday lacks Article III standing because it fails to satisfy the first requirement that the plaintiff suffer an injury in fact. "An injury in fact is an 'invasion of a legally protected interest' that is (a) concrete and particularized and (b) actual or imminent, *i.e.*, not conjectural or hypothetical." *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272,1280 (10th Cir. 2002) (quoting *Defenders of Wildlife*, 504 U.S. at 560 (1992)). "A main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury." *Morgan*, 365 F.3d at 888. "A plaintiff may survive a motion to dismiss for lack of injury in fact by merely alleging that a string of occurrences commencing with the challenged act has caused him injury; at that stage we presume that 'general allegations embrace those specific facts that are necessary to support the claim.'" *Wyoming v. Oklahoma*, 112 S. Ct. 789, 805 (1992)(quoting *National Wildlife Federation*, 497 U.S. at 889).

5

Quik Payday argues that it has been injured in fact due to the defendants' alleged violation of the Commerce and Due Process Clauses of the Constitution because: (1) defendants ordered Quik Payday to cease and desist lending to Kansas residents; (2) defendants fined Quik Payday $5,000,000; (3) defendants ordered Quik Payday to pay restitution; (4) defendants barred Quik Payday from future licensure and lending; and (5) defendants burdened Quik Payday to defend an ongoing administrative action in a distant forum.  Defendants argue that because Quik Payday has not been subject to any final order by the OSBC, it has not suffered an injury in fact and therefore lacks Article III standing.

The actions by the defendants constitute an injury in fact, even though a final order has not yet been issued.  Enforcement actions have commenced, a Summary Order has been issued, a presiding officer has been assigned, a pre-hearing conference has occurred, and a scheduling order has been entered.  Furthermore, the presiding officer has stayed the state administrative proceedings.  Therefore, the status of affairs at this time is that Quik Payday is, among other things, prohibited from doing business in Kansas and is subjected to a $5,000,000 fine.  Thus, the actions constitute a "concrete and particularized" and "actual or imminent" injury to Quik Payday.  Accordingly, it has sufficiently alleged that defendants' actions constitute an injury in fact and thus meets the first of the Article III standing requirements.

Defendants do not contest the adequacy of the allegations supporting the existence of the second and third standing requirements, but the court discusses those elements briefly

because all three elements must be established. *Defenders of Wildlife*, 504 U.S. at 560-61. The second requirement is that a causal connection exist between the injury and the complained of conduct. *Id*. In *Defenders of Wildlife*, the Court explained this element: "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. Quik Payday alleges that its injuries result from the administration of the challenged Kansas statute by the defendants. Therefore, the court concludes the second element is sufficiently alleged.

The third element requires that it be likely that a decision favorable to Quik Payday will redress the alleged injury. *Id*. at 561  In this case, if the court ultimately finds for Quik Payday regarding its constitutional challenges to the Kansas statute, it will not be forced to comply with the statute. Quik Payday's alleged injury would be redressed, so this element is also met. Therefore, since all three requirements of *Defenders of Wildlife* are met, the court concludes that Quik Payday has alleged facts sufficient to establish Article III standing and thus survives defendants' motion to dismiss on that ground.

**B.**     **Ripeness of Quik Payday's Claim**

Defendants' ripeness argument is that Quik Payday has yet to suffer an injury in the form of a final order and is essentially equivalent to their standing argument. "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807 (2003). Similar to standing, whether a cause

of action is ripe depends on whether the challenged harm has been adequately realized at the time of trial.[3] *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004). The main focus of the ripeness inquiry is "'whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006) (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1449 (10th Cir. 1995).

The defendants' ripeness challenge fails in this case because Quik Payday's alleged injury is in fact already occurring. *See id.* at 1098 (plaintiff's claim deemed ripe because supermajority requirement for wildlife initiatives was already occurring). Defendants have applied the Kansas statute in question to Quik Payday, subjected it to an administrative proceeding, fined it $5,000,000, and ordered it to cease doing business in Kansas. In this case, Quik Payday's alleged injury does not depend on any "uncertain or contingent future events that may not occur as anticipated" and therefore its claim is ripe for adjudication.

The ripeness inquiry also involves an assessment of the hardship to the parties if the court withholds consideration, that is "'whether the challenged action creates a direct and immediate dilemma for the parties.'" *Morgan*, 365 F.3d at 890-91. Quik Payday would suffer an immediate dilemma if this court withholds consideration at this time. They would

---

[3] The Tenth Circuit has held that when plaintiff alleges an injury in fact sufficient to establish standing, it also satisfies constitutional ripeness requirements. *See Roe No. 2 v. Ogden*, 253 F.3d 1225, 1231 (10th Cir. 2001); *Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999). Nonetheless, the court will separately analyze whether the ripeness requirements are met.

be forced to choose between continuing to defend an administrative proceeding based on a statute that may or may not be constitutional or paying the $5,000,000 fine and terminating all business in Kansas. The court concludes that Quik Payday's claim is ripe for review and accordingly denies defendants' motion to dismiss for lack of ripeness.

### C. Exhaustion of Administrative Remedies

Finally, defendants argue that Quik Payday has not fulfilled its obligation to exhaust state administrative remedies. The Supreme Court has clearly held that there is no duty to exhaust state administrative remedies before bringing a § 1983 action in federal court. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982). *See also, Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 710 (10th Cir. 2004)("Indeed, due to Congress's desire to provide a federal forum for the vindication of federal rights, § 1983 contains no exhaustion requirement.")(citing *Patsy*, 457 U.S. at 516). Therefore, the court denies defendants' motion to dismiss due to Quik Payday's failure to exhaust state administrative remedies.

### CONCLUSION

Plaintiff has alleged an injury in fact sufficient to invoke Article III standing, its claim is ripe, and it is under no duty to exhaust state administrative remedies before bringing its § 1983 claim. Accordingly, the court denies defendants' motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motion to dismiss

(Doc. # 2) and plaintiff's motion for oral argument (Doc. # 5) are denied.

**IT IS SO ORDERED.**

Dated this 26th day of September, 2006.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge